**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1402

ALEXIS GUERRERO,

        Plaintiff – Appellant,

  v.

OLLIE'S BARGAIN OUTLET, INC.,

        Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge. (1:21-cv-01960-RDB)

Argued: October 26, 2023                                                      Decided: August 26, 2024

Before WYNN, HARRIS, and BENJAMIN, Circuit Judges.

Reversed and remanded by published opinion. Judge Benjamin wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** Robin Ringgold Cockey, COCKEY, BRENNAN & MALONEY, PC, Salisbury, Maryland, for Appellant. Timothy McDevitt Hurley, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:** Ashley A. Bosché, COCKEY, BRENNAN & MALONEY, PC, Salisbury, Maryland, for Appellant.

DEANDREA GIST BENJAMIN, Circuit Judge:

Alexis Guerrero sued Ollie's Bargain Outlet ("Ollie's") for race discrimination under 42 U.S.C. § 1981, which guarantees all persons an equal right "to make and enforce contracts." Guerrero, a Black Dominican-American, alleges that he was prevented from entering into a contract to purchase flowerpots by the discriminatory conduct of an Ollie's employee who threatened him with a knife and shouted racial epithets at him. The district court granted Ollie's' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). It reasoned that Guerrero failed to sufficiently allege that he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers. Guerrero appeals. We disagree with the reasoning of the district court, so we reverse and remand for further proceedings.

I.

The following facts are taken from Guerrero's complaint and "where the district court granted the defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept those facts as true." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 300 (4th Cir. 2019).

A.

Guerrero is a Black man who was born in the Dominican Republic. In 2020, he and his sister were shopping for flowerpots in the outdoors section of an Ollie's store in Salisbury, Maryland, where he now resides. After locating one pot of interest, Guerrero and his sister searched for a second, matching pot. As they searched, Ollie's employee

2

Richard Murray, a white man, emerged with a pallet of more pots. Rather than unpacking the pots, Murray turned away, and Guerrero approached the pallet, locating a matching pot. Guerrero called to his sister, "There is another one here," and he sought to remove the pot by taking off the yellow plastic string wrapped around it. J.A. 8.[1] Rather than asking if Guerrero needed assistance, Murray displayed a knife with a seven-inch blade. He began "jabbing it towards . . . Guerrero and yelling, 'Hey you! You cannot touch that! Move over there!' " *Id.*

Fearful of the knife, Guerrero promptly moved away from the pots. Murray stared him down, moved toward the pots, and "aggressively cut[] the yellow plastic string." *Id.* Guerrero said nothing; he merely waited as Murray unwrapped the pots so he could retrieve the one he wished to purchase. Enraged, Murray approached Guerrero, wielded his knife toward Guerrero's face, and yelled, "Get them pots over there." *Id.* Guerrero calmly responded, "You just do your job because you probably had a bad day. My job was to come here and buy a pot." *Id.*

Murray continued wielding his knife and yelled, "Let me do my job," and Guerrero walked inside to find the store manager. *Id.* Murray shouted after him, "Y'all motherfucker niggas![2] I will stab y'all. That's why this fucking country is the way it is! Go back to your fucking country. Go back to Haiti." *Id.*

---

[1] J.A. citations utilize the red numbering generated by the CM/ECF system.

[2] This language is reproduced for accuracy.

3

When Guerrero found the manager, he informed him that Murray pulled a knife on him and his sister while shouting racial epithets. Seconds later, the two heard screams to "Call the cops!" from another part of the store. *Id.* at 9. Guerrero and the manager ran toward the screams and found bystanders surrounding Guerrero's sister and Murray. According to Guerrero's sister, Murray lunged at her with his knife and yelled, "I will stab you fucking nasty bitch!" *Id.* at 9–10. Murray then threatened, "I have guns!" and "I will shoot you." *Id.* at 10. He "also picked up a ceramic pot as if to throw it" at Guerrero's sister. *Id.* An Ollie's employee tried to usher Murray away, but Murray continued shouting, "Fuck you bitch! You motherfucking ass! Go back to your country you nasty ass Black bitch!" *Id.* at 10.

The manager finally intervened and led Murray to the back of the store while another Ollie's employee consoled Guerrero and his sister. The police arrived about fifteen minutes later, but Murray sped away in his car. Guerrero and his sister left Ollie's without purchasing any flowerpots.

B.

Guerrero sued Ollie's for race discrimination in violation of 42 U.S.C. § 1981.[3] He asserted that an Ollie's employee "acted out of racial animus and impeded [his] ability to enter into, or enjoy the benefits of, a contractual relationship, including purchasing goods from Ollie's." J.A. 11. He alleged that he was a customer of Ollie's and intended to purchase two matching ceramic pots, but Murray interfered with his right to contract when

---

[3] Guerrero also asserted Maryland state law claims for negligent supervision and negligent retention, but those are not at issue in this appeal.

4

he pulled a knife on him while he shopped, called him a "motherfucking nigga," and told him he could only choose from pots other than those on the pallet. *Id*. Thus, "Ollie's . . . denied [him] the right to make and enforce contracts and treated him with woefully inferior service than that afforded to Whites with the result that [he] could not purchase the pots he desired because of his skin color and national origin." *Id*.

Ollie's moved to dismiss the complaint for "failure to state a claim upon which relief c[ould] be granted." Fed. R. Civ. P. 12(b)(6). It argued: (1) Guerrero failed to sufficiently plead that he sought to form a contract with Ollie's and (2) Guerrero failed to allege that Ollie's denied him the opportunity to form a contract. The district court granted the motion, finding that Guerrero "failed to allege that he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers." *Guerrero v. Ollie's Bargain Outlet, Inc.*, No. CV RDB-21-1960, 2022 WL 991390, at *3 (D. Md. Apr. 1, 2022) (internal quotation marks omitted) (quoting *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004)). The court determined Guerrero "ma[de] no claim that Ollie's actually prevented him from purchasing a flowerpot," and "concede[d] that he voluntarily left Ollie's without attempting to make a purchase." *Id*. Guerrero timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

II.

We review de novo the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing reasonable inferences in the plaintiff's favor. *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

5

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because Rule 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III.

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id*. § 198l(b).

To state a cause of action for a § 1981 violation, a plaintiff must show "both that the defendant intended to discriminate [against the plaintiff] on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006); *see, e.g.*, *Williams v. Staples, Inc.*, 372 F.3d 662,

6

667 (4th Cir. 2004); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751–52 (5th Cir. 2001); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413–15 (7th Cir. 1996).

It is uncontested that Guerrero sufficiently alleged that Ollie's intended to discriminate against him based on his race when he asserted that a white employee threatened him, a Black Dominican-American, with racial slurs and physical violence as he shopped for flowerpots. Thus, this appeal focuses on whether the facts alleged in Guerrero's complaint, taken in the light most favorable to him, show that he had a contractual interest that was affected by the alleged discrimination. We conclude, for the reasons stated below, that they do.

A.

We turn first to whether Guerrero sufficiently alleged a contractual interest. Guerrero must allege "the loss of an *actual*, not speculative or prospective, contract interest." *Denny*, 456 F.3d at 435. (citation and internal quotations marks omitted) (emphasis added). In the retail context, § 1981 plaintiffs are required to establish that they sought to enter into a contract with the retailer. *Williams*, 372 F.3d at 667–68 (holding that plaintiff showed he sought to enter a contract when he offered payment for an item by check). Moreover, two of our sister circuits have concluded that, in other words, there must have been "some tangible attempt to contract"—demonstrating interest in specific items or selecting certain merchandise for sale—with the defendant to establish a contractual duty between them and trigger statutory protections. *Green v. Dillard's, Inc.*, 483 F.3d 533, 538-39 (8th Cir. 2007) (quoting *Morris v. Dillard Dep't. Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001)).

7

Ollie's argues Guerrero's § 1981 claim fails because he purports to have only lost a *prospective* contractual relationship, as he alleged that he was merely browsing flowerpots. In Ollie's' view, Guerrero's browsing cannot constitute an allegation that Guerrero sought to enter a contractual relationship. In advancing that argument, Ollie's relies on *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427 (4th Cir. 2006). There, the court held that there was "no doubt that plaintiffs ha[d] demonstrated a concrete contractual relationship" where they already purchased services and reached a verbal agreement to receive additional services. *Id*. at 435. Ollie's contends that unlike *Denny*, Guerrero made no effort to form a contractual relationship with Ollie's as he alleged no facts indicating an attempt to purchase the flowerpots, or of any discussion with an employee about purchasing the pots.

We disagree—after all, "[i]t is intent to purchase, not physical possession, that is needed to create a contractual interest." *Green*, 483 F.3d at 539 (citing *Denny*, 456 F.3d at 435); *see also id.* at 538–539 (holding that the plaintiff satisfied requirement to show engagement in a protected activity under § 1981 by selecting a specific item locked in a display case and communicating to store employee her desire to purchase the item); *Denny,* 456 F.3d at 435 (finding customer's telephone conversation with receptionist at beauty salon about purchasing additional services satisfied § 1981's contract requirement). Guerrero alleged such an intent: he went shopping for flowerpots, and after selecting his preferred pot, he continued searching for a matching one. Once he found it, he told his sister, "There is another one here," J.A. 8, and tried to retrieve his desired matching pot. Even after Murray wielded a knife at him, Guerrero waited patiently as Murray unpacked the pots so he could obtain the companion piece to the pot he already selected. But perhaps

8

most critical, he plainly told Murray, "My job was to come here and buy a pot." *Id.* (internal quotation marks omitted). In sum, he explicitly demonstrated his intent to contract with Ollie's when he selected the particular pots he desired, attempted to remove the second pot from the display, and shared his intention to purchase them with a store employee. Viewing these allegations at the 12(b)(6) stage, we have "no doubt" that Guerrero sufficiently alleged an "actual . . . contract interest" protected by § 1981. *Denny*, 456 F.3d at 435 (internal quotation marks omitted).

B.

Now we turn to whether Guerrero has pled sufficient facts to show that the discrimination interfered with his alleged contractual interest. As noted in the preceding section, Guerrero must allege "the *loss* of an actual . . . contract interest." *Denny*, 456 F.3d at 435 (emphasis added & internal quotations marks omitted). Additionally, "a [§ 1981] plaintiff must initially plead, and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). In other words, to successfully state a claim under § 1981 in the retail context, Guerrero must allege that "he was denied the opportunity to contract for goods or services" because of his race. *See Williams*, 372 F.3d at 667–68.

Ollie's argues that Guerrero failed to allege facts sufficient to show that he was actually denied the opportunity to purchase the flower pots because he did not allege that they denied him admission to the store, denied him service, asked him to leave the store, or refused to sell him items. At best, according to Ollie's, Guerrero alleges that Murray's actions discouraged or dissuaded him from wanting to make a purchase, and that is

9

insufficient to state a claim under § 1981. *See Office Max*, 89 F.3d 411 (rejecting claim when defendant retail establishment called "the police to 'check out' African-American patrons" because plaintiffs could not identify an "actual loss of a contract interest" where "[t]hey were denied neither admittance nor service, nor . . . asked to leave the store" and were instead only "discouraged and dissuaded . . . from making the purchase" they intended).

Again, we disagree. Guerrero asserts he could not obtain the second pot because Murray jabbed a seven-inch knife in his direction and yelled, "You cannot touch that! Move over there!" J.A. 8 (internal quotation marks omitted). Even when Guerrero backed away from the pots because he feared the knife, he still waited for Murray to unwrap the pallet so he could retrieve the second pot. *Id*. But Murray, again, wielded the knife toward Guerrero's face and yelled, "Get them pots over there." *Id.* Murray later shouted, "Y'all motherfucker niggas! I will stab y'all. That's why this fucking country is the way it is! Go back to your fucking country. Go back to Haiti." *Id*. These assertions are more than sufficient at this stage to show Guerrero was denied the opportunity to contract for the pots based on his race. They plainly demonstrate that Murray refused to assist Guerrero with the sale and prevented him from making his purchase, all while yelling racial slurs and threatening physical violence against him. Moreover, a demand to "Go back to your fucking country" surely is sufficient to show Guerrero was asked to leave the store. *Id.* If these allegations are not enough to sufficiently allege the denial of an opportunity to contract based on race, we do not know what is.

C.

10

We close by noting that the district court found, and Ollie's argues, that Guerrero failed to sufficiently allege that Ollie's denied him the right to contract for goods because he implicitly conceded in his memorandum of opposition to the motion to dismiss that he voluntarily left the store without attempting to make a purchase after Murray fled the premises. Not so. At the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). And while the complaint provides no allegations about what happened immediately after Murray left, no such allegations are necessary—the violation was completed based on Murray's behavior alone.[4] *E.g.*, *Green*, 483 F.3d at 535–36 (allowing a § 1981 case to proceed based on the discriminatory behavior of one sales clerk even though another clerk and a manager were willing to help the plaintiffs complete their purchase after the offensive clerk "stalked off," and the plaintiffs did not go through with the purchase because they were so upset by the offensive clerk's actions). Thus, we find that argument meritless.

## IV.

Taking Guerrero's factual allegations together and accepting them as true, we find that he has sufficiently alleged that Ollie's intended to discriminate against him on the basis of race and that the discrimination interfered with a contractual interest. Therefore, we are

---

[4] For this reason, even if we could consider Guerrero's implicit concession in his briefing below that, after the events related in the complaint, he voluntarily left without making further attempts to purchase the pots, that concession is immaterial.

11

satisfied that his complaint states a plausible race discrimination claim under 42 U.S.C. § 1981.  The order of the district court is

*REVERSED AND REMANDED*.